The next case today is Luz B. Melendez-Colon et al. v. Julio Rosado Sanchez et al. Appeal number 191956. Attorney San Juan. Hey, please the court. I'm Manuel San Juan. I represent the plaintiff's appellant in this case. Your honor, after a week-long jury trial, a jury of six men and women were instructed on the law applicable to the statute of limitations defense raised by the defendant in this medical malpractice case. And there's no question that the law that the jury was instructed on was a correct application of the law. They were instructed as to the one-year statute of limitations, the plaintiff's burden of proof, and proving by a preponderance of the evidence that they had exercised diligence to acquire the knowledge that they needed to sue. And even so, that they did not obtain the knowledge prior to a certain point. And they also were instructed as to what is reasonable diligence and how to determine that. The jury applied the law to the evidence that they heard, and the answer to the verdict form questions very carefully. The court will note that in the verdict form, the jury rejected one of the plaintiff's causes of action. So it should be clear to the court that this jury was no rubber stamp. It was no runaway jury. The question was put to them, did you find by a preponderance of the evidence that the plaintiff had the necessary knowledge to file suit at any time before October 19, 2015, that is a year before they actually filed suit, or that the plaintiff could have had this necessary knowledge before that date if they exercised proper diligence, and the jury answered that question in the negative. Now, after allowing the jury to answer these questions, the judge nullified the verdict in its totality because he disagreed with them, only as to the issue of whether the plaintiff exercised diligence. Counsel, be fair to the judge. It's not because he disagreed with them. The judge found that in his view, there is no reasonable view of the evidence that supported the jury's answers to those questions. That's either correct or incorrect. That's what we're here to determine. But don't insinuate that the judge did something in an offhanded manner or because he disagreed with the jury, or that there was something faulty in his procedure. There wasn't. The judge handled this in a proper manner. Well, Judge, with respect, I'm not sure that you're absolutely right. Look at what the judge said to justify his decision. I've read his decision. He candidly admitted that he had qualms about the credibility of the plaintiff. He questioned their supposedly changing story on the reasons why they sought copies of the medical records in the first place. Even though the plaintiff's testimony on this point was unchallenged, they testified that the only reason that they sought those medical records was because they believed that these medical records were necessary in order for treatment to continue in Atlanta. Not because they suspected any sort of medical malpractice, not because they had any other reason to do so. But the judge questioned that explanation and said, I quote, that it was difficult to reconcile that explanation with their loss of trust, their avowed loss of trust in the doctors and the decision to seek better treatment in Atlanta. The judge, with all due respect to him, and I know him and I consider him a friend, he made credibility determinations about the plaintiff here. And that, as I'm sure the court knows, is not the judge's problem, particularly where the jury is asked to decide things that are based upon the reasonableness of human conduct. And this in particular, this questioning of the credibility of the witnesses was the foundation of the judge's belief that once they obtained the medical records in August of 2014, they had to act, they had to investigate medical malpractice, whether there was medical malpractice. I'm sorry, go ahead, Your Honor. I don't want to interrupt you, Judge Selvey is about to ask you about this. I want to just understand about how the law operates here, because I'm a little bit confused about how I'm supposed to think about it. On the one hand, your claim cannot accrue. So you cannot have a claim that could succeed without expert evidence in a case like this. But everybody seems to agree. We don't look at the accrual date from the moment you get the expert. So that wouldn't make any sense. Okay, that's true. Okay. So what is the start date for determining the claim accrues for purposes of the diligence? Well, in a situation in which everybody agrees, you're going to need the expert in order for to have a valid claim. And you don't get the expert for some period of time. So you couldn't know until the expert comes back for sure that you have a valid claim. You couldn't sue until you had the expert. So what does the law tell us about when we're supposed to start the clock? In your view, what is the date the clock starts? Well, Judge, it depends upon the particular circumstances. Why don't we use, as an example, this case? In this case, the clock begins at some point that would be in the year 2015. And what would be the point? Well, I would say it's the point where they ask the expert, do you think that there's any malpractice? And at what point what did they know at that point? Well, at that point, what they knew was, first of all, that all these symptoms that the plaintiff had suffered were potential complications of these surgeries. This is very delicate surgery. And the plaintiff signed it. At 2015, is that when she had the successful third surgery? Or is that after the second? That's after the successful third surgery. This is after she is fully recovered. Great. The district court was of the view that the clock began to tick when they received the medical records in August of 2014. That's at least one of the points. And is that after the first surgery or after the second surgery? That would be after the second surgery when the doctor offered a third surgery because they said, we don't want a third surgery from you. We're going to go to Atlanta and get a second So here's what I would like you to help me with. We have two possible dates. One's after the second surgery when they know they don't trust the doctor to do the third surgery. Right. That's the date you lose. If that's the date, yeah, we lose. Okay, but you say that's not the date. The right date is after the third surgery. Yes, you're right. Okay. That's right. Even though that before you could actually file the suit because you didn't yet have the records. Right. And in that case law, what am I supposed to look to, to help me decide whether as a legal matter, the right time to start the clock is after the second surgery, like the district court said, or after the third surgery, like you said? Well, this court in the Espada case that we cite, and in other cases that are cited in the brief, has said that the point where the clock begins to run is where you know that you suffered an injury and that it is a tort. That is, the responsible party is a tort defendant. So, or that, that you have, you've exercised reasonable diligence to find out about that. And your contention would be at the end of the second surgery, they certainly had doubts about that person, but the way they would really know that it was probably attributable to his conduct was that the third one was successful. That's the only way that they know in this particular case is, is when they have a physician who is qualified who tells them that. No, but you told me just earlier that you agreed the clock starts prior to them. Well, the clock, the clock adds to diligence because there's two, one is when you have actual knowledge, the other is constructive knowledge. So diligence begins in our case, I would say, when they consult with the doctor and say, is it possible here that these symptoms were the results of medical malpractice? And the doctor says, okay, let me take a look at the medical records. You're saying you couldn't have known it was a tort at all. You couldn't even been in the realm of knowing it was a tort until the third surgery ended. Yes. Because only then would you know that what happened with the first two wasn't sort of what was supposed to Well, what, what could have happened because all of the symptoms that you have are potential complications from the surgery. Counsel, counsel, excuse me. I think you're, I think we're getting this in the wrong posture. There aren't just two dates here. There are three dates. It's after the second surgery. There is after the third surgery, but the date that you're contending for is not only after the third surgery, but after the seven or eight month rehabilitation period that followed the third surgery. That's correct. Okay. So, and, and that, that to me is the toughest part in the, in the case, the third surgery occurs. The plaintiff fortunately, you know, gets better. You've got the medical records in your, in your possession, but no one then does anything for another seven or eight months. And at that point you approach the doctor and then you've got to get the, the records translated, which takes another seven or eight months. Right. And, and if, if it's that second point, which is the point of inquiry notice the point that, that starts this morning, then you're, you're out on the, on the statute of limitations. And I've got another question that you haven't dealt with. You say in your brief that, that you, we've got to be mindful that you can't sue in, in Puerto Rico in a medical malpractice case until you have a medical opinion in your favor. But how does the doctrine of extrajudicial claims figure into this case? The fact that Puerto Rico, as I understand it, provides a mechanism where without having an expert opinion, without actually going to court, a plaintiff can notify a potential tort visa of a potential claim and thereby interrupt the running of the statute of limitations. You could have done that before you got any medical opinion from Dr. Rafai, couldn't you? Our position would be, your honor, that it would be irresponsible to do that because we had no idea, our clients had no idea whether or not these complications that had arisen, her symptoms, had anything to do with something that had been done wrong. And if you're going to send an extrajudicial claim, both the plaintiffs and their attorney have to be very careful not to be accusing a doctor improperly of something that they have no idea whether it's, whether there's a factual basis for it or not. And they could be sued for defamation, for libel, if they make a claim that's false. It would be irresponsible, your honor, to do it in this particular case because of the complexity of the issues involved, because of the need for a neurosurgeon, not just any doctor, but a neurosurgeon to give a very specific and complex technical opinion, which was what he gave in this case. Can I go back to Celia's setting of the dates, which was helpful? So we've got three dates. There's the 2014 date after the second surgery, there's the 2015 date after the third surgery, and then there's the ultimate question of, did you wait too long after even the third surgery? What was the basis for the district court's ruling though? Was it that you were already on notice after the second surgery, or was it that you waited too long after the third, or was it both? It seems to me that it would be both, your honor. It's not clear in my mind, but I think that the judge is basically saying in his view that in August of 2014, when they obtained the medical records, then they had to act. They had to investigate medical practice. But did the district court make a ruling that even if the right date for starting the diligence clock was after the third surgery, you still were not diligent? I think the court tried to bolster their reasoning by saying exactly that, your honor. What's your answer to that then? Well, the answer is, your honor, that the court took the negative inferences that are disfavorable to the plaintiffs from the evidence to reach its ruling, and that was error. There is a perfectly legitimate positive inference that can be gleaned from all of the evidence that was submitted, and that's what the jury considered, and that's why the jury's verdict in this case should be respected. And again, you're ending up really on the question that takes us back to the standard by which we look at the jury's determinations here. And as I understand it, you point out that issues of due diligence and adequate knowledge are generally ones for the jury. That's right, your honor. There are questions for the jury, and particularly when the jury has to judge human conduct, the reasonableness of human conduct, we have great deference for the jury, but more so in a case where the jury is judging the reasonableness of human conduct, which is this case. Can you point to a case where the judge has effectively rejected the jury's determinations? In a case of due diligence, and again, a due diligence context, and the due diligence context, your honor, I didn't find any cases in that particular context. Just going the opposite way on that, is there any case law that we could rely on that would support you to suggest that you're allowed to wait for the course of treatment to resolve itself, even though you're already on trial? I don't think that there's a case that says that specifically, your honor, and I would say that in this case, it's not that the plaintiffs waited, it's just that they simply did not have the notion that they were the victims of a tort until they finally asked the doctor about it. You can't have it both ways. You can't say that the clock for diligence starts after the third surgery ends, but the reason why they didn't have to do anything until they heard from the doctor is that they weren't on any duty to act diligently until the doctor came back. The diligence is a fluid concept, your honor. You have to look at it in the particular context of what happened to them in this particular case, and what happened to them was that, you know, after the third surgery, there was a long period of recovery. Bear in mind, judge, after the first surgery, the plaintiff felt better, and she, for about a couple of weeks, she was okay, and then she relapsed. So even after the third surgery, even after she felt better, there's still no reason for her to necessarily believe she's the victim of a tort. And, you know, if 10 years had passed, I think it would be a clear case, but the passage of time here, there's never been a case that has said that this needs to be applied rigidly. In fact, quite the opposite. The Supreme Court of Puerto Rico has said, this is a flexible doctrine, has to be looked at in the particular context of the case. In this case, they were not perfectly diligent, but they were reasonably diligent. This is what the jury found, and this is why the court should affirm. I'm sorry, reverse the trial court. I'm sorry. Um, thank you. One, just, you know, uh, following up on that. So your position is, in sum, that the district court erred in holding that no reasonable jury could find that your clients, uh, lacked constructive knowledge between June 20th, 2014 and October 19th, 2015? That's right, Your Honor, because reasonable minds could differ as to that question, based on the evidence. Thank you. Thank you. Thank you, Attorney San Juan. You can mute your audio and video and Attorney, uh, Lopez, please, uh, proceed. Yes, if it please the court, Jeanette Lopez de Victoria for Dr. Rosado and his insurance, uh, my colleague seems to forget that during the trial, and this is in our brief and in the, obviously, in the appendix, the court specifically asked why it was that the appellants were presenting evidence as to the procurement of Dr. Rosado's medical records, why they were spending so much time on it. And his attorneys, the plaintiff's attorneys, made the representation to the court that it was because that was evidence that was being offered to counter our affirmative defensive statute of limitations. That is the reason why the court took the August 22nd, 2014 date, because the, that is the date that the, that the appellants actually obtained the medical records from Dr. Rosado. And that is the first and only evidence of any affirmative action undertaken by the plaintiffs with regards to a potential claim. In, under Puerto Rico law, evidence of diligence usually requires something affirmative on the part of the plaintiff. That can either be consultation with an attorney, procurement of medical records, which is one of the actions that are understood, consultation with another physician, or the request for an expert to review the records. So the only thing that we had, or that the court had, and the jury, was the procurement of the medical records on August 22nd, 2014. After that, there was absolutely nothing until November of 2015, after Mrs. Melendez had already undergone her third surgery with Dr. Tafai in Georgia, and also all of her post-surgical treatment when she was formally discharged. They waited those 15 months before they even asked Dr. Tafai to review the records. By that time, her claim was already, I'm sorry, what? Ms. Lopez, the, the jury had, had more than merely evidence of the procurement of the, of the records. They also had an explanation from the plaintiffs as to why they had procured the records. And if that explanation was believed, there was nothing about that explanation that would have triggered the statute of limitations. The testimony was that they obtained the records because they thought that the new surgeon in Atlanta would need them. Right. They had, that was what they testified, that they procured those medical records for treatment, but then they never even gave, they never even turned the medical records over to Tafai. Hang on, Dr. Tafai said later that he didn't need them, but isn't that, isn't that a classic jury question to determine what, whether they had procured the medical records because of a suspicion of malpractice or because they thought they were going to be needed for future treatment? No, that's not. And the reason why is it because under Puerto Rico law, where a plaintiff brings an action more than a year after the injury took place, they have the burden of proving that they lacked the necessary knowledge absent any diligence and from what point in time. Now, with regards to Dr. Rafai, when he first saw Mrs. Melendez in November of 2014, she actually informed him that there was an interoperative injury that she had knowledge of why she had been experiencing pain. And that was something that not only the, both the plaintiffs, both Mrs. Melendez, her son Milton, and her other son, who was a fact witness, testified that from the, the, after the first surgery in February of 2014, she experienced extreme pain and even got to the point where she couldn't walk. I don't think I understood, to judge Celia, your answer was that she had the burden. The burden shifts, right. The burden, there's a burden shifting under Puerto Rico law. But why doesn't the testimony that Judge Celia referred to provide a basis for concluding that she met the burden? They gave testimony. Because she didn't meet the burden. Because at that point, then she, her burden then, in other words, if she didn't, in August 2014, or after, let's say the first time she goes to Dr. Rafai, she never asked him to check her records. Since we're already beyond a year after the time that she procured the medical records, when they first asked him to, to review the records was in November of 2015, more than one year after she procured the records in 2014. That was after the surgery. That's after the surgery. No, no. She procures the medical records in August of 2014 before the third surgery. She moves to Georgia in September. She doesn't ask Rafai, Dr. Rafai, to even review those records until November of 2015. Now, the legal concept is in that, excuse me, in that intervening period, between the time she moves to Atlanta and sees Dr. Rafai, and the time he's asked to review the records with a view towards a claim, Dr. Rafai has indicated that he doesn't need the records for the purpose of continued treatment. Right. But even at that point, if she had the medical records, she could have asked him to review them. But that's what I'm saying. Just listen to the question. Okay. Sorry. Okay. That's all right. Okay. The question is, there was testimony from her side that she only wanted the records for treatment. Why doesn't that meet the burden that you say she had to meet? The burden, the legal burden reverts back to the date of the injury. And the date of the injury would have been when the surgeries were performed by my client back in February or March of 2014. And then her burden is to show that she has to prove that she was diligent, notwithstanding, during that time. There was no evidence of either of those. That's why, actually, the moment of when the cause of action accrued for purposes of the court's opinion could be fluid because he's basing it on the evidence. But as a legal matter, the requisite knowledge on her part reverts back to the date of the injury. And that's where they by the time they even asked FIFI to review the records in November of 2015, the case was already time-barred. Yeah. But if we reject that view because all we think the evidence supported a finding that at that point they weren't on notice of the tort. I know you disagree with that. I'm saying if we disagree with you and we conclude that that was not enough just because she was feeling injured after the first surgery, if that's not enough to say that she, that they were on notice of the tort to start the diligence inquiry, how can you win? Because their contention is that there's a later date, which is the first date that they conclude that we now think there's suspicion of an actual tort. And they say that date is after the third surgery. And then we look at diligence from that point. Even if you looked at diligence, I'm sorry, even if you looked at diligence from that point, from the third surgery was in December of 2014. They didn't even ask for FIFI to review those in November of 2015. And then they didn't even get an expert opinion until September of 2016. They didn't undertake any action in between to toll the statute of limitations. Not only that, here there's- What's your best case? No. My best case is the one that was presented to the court. But anyway, it's black-letter law in Puerto Rico that malpractice claims do not accrue, not only when potentials receive an expert report, but they don't have to have knowledge that there's been a tort. All that is required is that there be an outward manifestation of the injury that was sustained. And the plaintiffs, by their own evidence, have that knowledge since the spring of 2014. Can you please listen to my question? Sure. Okay. It is not helpful to me if you're not trying to answer my questions. Okay. Okay. And I just want to understand what the answer is. If we started the clock from the third surgery for diligence purposes, what is your authority from Puerto Rico case law that the time that they took from the third surgery till the time of then bringing the suit lacked reasonable diligence? Okay. Even if we take the time of the third surgery, which was in December of 2014, they didn't file their suit until, I think it's October of 2016. So we're talking about 22 months transpired between that time. So the statute of limitations expired on their watch. They could have undertaken any tolling activity during that time. They could have notified an extrajudicial claim. I disagree with my colleague that it would have been malpracticed to do so. It was actually legal malpractice not to notify one because they also could have filed a suit and told the statute of limitation and had a whole other year. If there aren't any more questions. I have a question. Sure. Is there any evidence in the record that your client at any point suggested to the plaintiff or the co-plaintiffs that the outcome of her first or second surgery was counter to Dr. Rosado's expectations? I think there was probably evidence that he believed in. He told them after both procedures that they had not had the result that was expected or anticipated. This is not a case where there were reassurances on his part where he told them, oh, no, this is just you recuperating and you'll get back to normal. In fact, he had recommended a third procedure in June, which was rejected by the plaintiffs and they wanted Mrs. Melendez to go to Atlanta to be evaluated. She was ultimately subjected to the third procedure with Dr. Hathai. Do we know when the appellants retained counsel, the date that they retained counsel? There was no evidence to that effect that was presented by plaintiffs. The only evidence of an affirmative action on their part to do anything in relation to a potential claim was the procurement of the records and then the request to Dr. Hathai in November of 2015 to review the records for possible malpractice. There's nothing in between. Thank you. Thank you very much. Thank you. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. I thought I had reserved a couple of minutes for rebuttal. Maybe I'm wrong. I'm sorry, Judge. I don't have that. I didn't have that. No, Judge. If you want to give it, obviously. Okay, so that's fine. I think we went long. We're good. If I may, Your Honor, just to express my sincere condolences on the loss of Judge Delroy. I don't know if you've learned that he passed away last night, but to express my condolences to the court. We did, and we appreciate you saying that. Well, the court will have a statement, I'm sure. Thank you, Your Honor. Have a good afternoon. Console may disconnect from the meeting. IT will stop both the recording and the live audio stream, please.